COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, O'Brien and Russell
Argued at Alexandria, Virginia


FRANKLIN MINOR

v.      Record No. 2047-15-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
NOVEMBER 8, 2016


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Peter T. Hansen for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellee.


Franklin Minor, appellant, was convicted of five counts of aggravated sexual battery by a

stepparent in violation of Code § 18.2-67.3 and four counts of rape of a child in violation of

Code § 18.2-61. On appeal, he contends the trial court abused its discretion in denying his request

to withdraw his guilty pleas. Finding that the trial court lacked jurisdiction to consider appellant's

motion to withdraw his guilty pleas, we lack jurisdiction, and accordingly dismiss the appeal.

BACKGROUND

Appellant was indicted on twenty-one separate charges in multiple cases alleging sexual

offenses against his stepdaughter; eighteen of those charges were consolidated to be tried in one

proceeding. Prior to trial, appellant moved the court for a competency evaluation and an evaluation

for sanity at the time of the offense. The court granted the motions and subsequently conducted a

hearing to determine whether appellant was competent to stand trial.[1]

---

[1] Appellant previously had been evaluated for competency prior to his preliminary
hearing and was found competent at that time.

At the hearing, the trial court accepted Dr. Kenneth Showalter as an expert in the area of forensic clinical psychology. Prior to testifying, Dr. Showalter interviewed appellant and conducted an evaluation for his competency to stand trial. He testified that, in general, during evaluations, he assesses whether an individual has a factual understanding of the legal process, or a "grasp of the facts" and an ability to engage with counsel to prepare a defense. In his first interview of appellant, he performed an IQ test and determined that appellant's verbal reasoning skills were in the low to average range. He also found that appellant knew the basic roles of the judge, defense counsel, and the attorney for the Commonwealth. Dr. Showalter further testified that, after explaining the concept of a plea agreement to appellant, appellant "had a very concrete rudimentary understanding of a plea bargain."

During a rare second interview inspired by concerns raised by appellant's counsel, Dr. Showalter conducted a personality test and found no evidence that appellant was trying to fake the results of the testing. A prominent finding was that appellant wants to please authority figures. Dr. Showalter concluded that appellant does not like to face unpleasant reality and may engage in "wishful or magical thinking" in order to make "all the bad stuff in life [to] go away." Dr. Showalter opined that appellant was competent to stand trial, and the trial court so found.

On August 21, 2015, appellant and the Commonwealth entered into a written plea agreement. Specifically, appellant agreed "to plead guilty to, pursuant to North Carolina v. Alford,[2] and be found guilty of" five counts of aggravated sexual battery and four counts of rape. Of particular importance for the issues raised in his appeal, appellant, by the express terms of the agreement, pled guilty to the rape charge in Case No. CR15-56. In exchange for appellant's guilty pleas, the Commonwealth agreed to seek dismissal of the remaining counts.

---

[2] North Carolina v. Alford, 400 U.S. 25 (1970). "When offering an Alford plea of guilty, a defendant asserts his innocence but admits that sufficient evidence exists to convict him of the offense." Ramsey v. Commonwealth, 65 Va. App. 593, 596 n.1, 779 S.E.2d 241, 243 n.1 (2015).

At a hearing on August 21, 2015, appellant appeared before the trial court and entered the guilty pleas specified in the written plea agreement. Prior to accepting the guilty pleas, the trial court and appellant engaged in a routine colloquy related to the guilty pleas. Specifically, appellant stated that he understood the charges against him, had discussed them with his lawyer, and had entered his pleas freely and voluntarily.

After this colloquy, the trial court asked the prosecution to summarize the evidence, and the prosecution did so regarding all of the charges to which appellant was pleading guilty. Regarding Case No. CR15-56, the Commonwealth indicated that the victim would testify that appellant "first had sexual intercourse with her when she was five years old. She reported that he told her that he wanted to try something new and took her into his bedroom where he had sexual intercourse with her."

After hearing the prosecution's recitation of the facts, the court inquired whether appellant's counsel agreed that the Commonwealth's recitation of the facts was consistent with what the Commonwealth's evidence would have been if the matters were tried. After appellant's counsel responded in the affirmative, the trial court engaged in a further colloquy with appellant. Appellant indicated to the trial court that he did not want to risk being tried by a jury and that he understood that, by entering the Alford pleas, he was, among other things, waiving his right to a jury trial, waiving his right against self-incrimination, waiving his right to confront and cross-examine his accusers, waiving his right to defend himself, and waiving his right of appeal. Appellant also confirmed that he was not under the influence of drugs or alcohol, that no one had coerced him to enter the guilty pleas, that he was aware of the sentencing guidelines and had discussed them with his attorney, and that he was aware that there was no parole in Virginia.

At the conclusion of the colloquy, the trial court accepted appellant's guilty pleas. Consistent with the plea agreement, the court ordered a presentence report and an evaluation

pursuant to Code § 19.2-300.  The trial court memorialized its acceptance of the guilty pleas in an August 21, 2015 order that specifically referenced the trial court's acceptance of the guilty pleas, including the guilty plea with respect to Case No. CR15-56.

A sentencing hearing was held on November 19, 2015.  At the hearing, the trial court received the presentence report, the results of the evaluation performed pursuant to Code § 19.2-300, and evidence regarding appropriate sentences for the crimes to which appellant had pled guilty.  In addition to imposing a post-release period of probation and fines for some of the offenses, the trial court sentenced appellant to 155 years of incarceration, but suspended eighty-five years, leaving appellant with seventy years to serve.  Regarding Case No. CR15-56, the trial court specifically stated that "the court is going to sentence you to 20 years in the state penitentiary.  I'll suspend 10 of the 20 years.  And upon release, you will be placed on 10 years probation."

On November 23, 2015, the trial court entered an order that purported to memorialize the rulings from the November 19, 2015 sentencing hearing.  As the parties acknowledge, the November 23, 2015 order, in its concluding portion, correctly states that appellant was sentenced to 155 years of incarceration with eighty-five years suspended, fined $50,000, and was subject to a period of ten years of probation upon release from incarceration.  The order, however, suffered from an inadvertent omission.

Despite accurately reflecting the total sentence, the order contained no specific reference to Case No. CR15-56.  Appellant does not dispute that he, as a matter of fact, pled guilty to, was convicted of, and was sentenced for a rape of a child in Case No. CR15-56; rather, he acknowledges that, in listing the various charges for which he had pled guilty, had been convicted and had been sentenced, the trial court inadvertently omitted reference to Case No. CR15-56.

- 4 -

On December 18, 2015, appellant, by counsel, filed a notice of appeal. The notice of appeal referenced the November 23, 2015 order and challenged all nine of appellant's convictions. Notably, the notice of appeal listed all of the case numbers corresponding to appellant's convictions, including a specific reference to Case No. CR15-56.

On December 29, 2015, thirty-six days after the entry of the November 23, 2015 sentencing order, appellant, acting *pro se*, filed a motion for reconsideration in the trial court. Among other things, the motion asserted appellant's innocence and his assumption that his guilty pleas would have resulted in a lesser sentence. On December 30, 2015, the trial court entered an order denying the motion for reconsideration.

On January 6, 2016, the trial court entered an "amended" sentencing order. As had the November 23, 2015 order, the "amended" sentencing order noted that appellant was sentenced to 155 years of incarceration with eighty-five years suspended, fined $50,000, and was subject to a period of ten years of probation upon release from incarceration. The sole change in the amended order was the insertion of the previously omitted recitation of the trial court's rulings in Case No. CR15-56. The amended order does not contain the phrase "*nunc pro tunc*" or reference Code § 8.01-428(B).

On January 20, 2016, appellant and his trial counsel filed multiple motions in the trial court. Appellant, by counsel, filed a motion to "suspend or postpone execution of sentence" and a motion "to vacate judgments of guilt and withdraw guilty pleas" and his counsel filed a motion seeking leave to withdraw. The motions noted that the January 6, 2016 amended sentencing order had corrected the omission in the November 23, 2015 order of reference to Case No. CR15-56 and accurately reflected appellant's guilty plea, conviction, and sentence in that case.

The trial court held a hearing on the various motions on January 22, 2016, allowing appellant to present evidence in support of his motion to vacate the judgments of guilt and to

withdraw his guilty pleas. The trial court denied the motion to withdraw the pleas, making the following findings:

> He didn't show any reservations in answering the questions, any hesitation in answering the questions. He answered all the questions. He signed the proffer of evidence that was submitted. He said that was -- acknowledge that would be the Commonwealth's evidence if we had gone to trial in this particular case.

The court explained that all the problems appellant complained of were known to appellant between the time he entered his pleas and his sentencing, yet "[i]t was only until after the Court imposed sentence that all of a sudden this becomes a problem. . . . [J]ust because you don't like the sentence, that's not a manifest injustice." The trial court also granted counsel's request to withdraw.[3]

This appeal followed. In his sole assignment of error, appellant asserts that the trial court erred in refusing to allow him to withdraw his guilty pleas.[4]

## ANALYSIS

### I. Appellate Jurisdiction

Before addressing the merits of an appeal, we first must determine whether we have jurisdiction. "[T]he question of jurisdiction is one for the determination of the appellate court only. Before the merits of this case can be considered, [this Court] must determine whether it has jurisdiction." Comcast of Chesterfield County, Inc. v. Bd. of Supervisors, 277 Va. 293, 299, 672 S.E.2d 870, 872 (2009) (internal quotation marks and citations omitted); see also Kotara v. Kotara, 55 Va. App. 705, 707, 688 S.E.2d 908, 909 (2010).

---

[3] Appellant's current counsel was appointed subsequently to represent appellant regarding any appeal.

[4] On the merits, appellant argues, among other things, that the trial court abused its discretion in denying his motion to withdraw his guilty pleas because, although he was found competent to stand trial, appellant was not sufficiently competent/aware to plead guilty.

"The concept of jurisdiction defines power. With regard to the Court of Appeals of Virginia . . . , the powers . . . are . . . prescribed by statute." Kelley v. Stamos, 285 Va. 68, 75, 737 S.E.2d 218, 221 (2013). Accordingly, we turn to the relevant statutory provisions to determine whether we have jurisdiction over this appeal.

Code § 17.1-406(A)(i) provides that "[a]ny aggrieved party may present a petition for appeal to the Court of Appeals from any final conviction in a circuit court of a traffic infraction or a crime, except where a sentence of death has been imposed." In interpreting this language, the Supreme Court has held that "[t]he statutory language is restrictive, limiting the Court of Appeals' appellate jurisdiction to appeals from final criminal convictions and *from action on motions filed and disposed of while the trial court retains jurisdiction over the case.*" Commonwealth v. Southerly, 262 Va. 294, 299, 551 S.E.2d 650, 653 (2001) (emphasis added). Thus, even though appellant's challenge to the trial court's denial of his motion to withdraw his guilty pleas unquestionably is a challenge to criminal convictions, we have jurisdiction to consider his appeal only if the trial court had jurisdiction to entertain the underlying motion. For the reasons that follow, we find that the trial court lacked such jurisdiction.

## II. Trial Court's Loss of Jurisdiction

Our review of whether the trial court retained jurisdiction over the case to allow it to consider appellant's motion to withdraw his guilty pleas involves the interpretation of statutes and Rules of the Supreme Court of Virginia. Accordingly, it poses a question of law that we review *de novo*. LaCava v. Commonwealth, 283 Va. 465, 470-71, 722 S.E.2d 838, 840 (2012).

- 7 -

## A. Rule 1:1[5]

A circuit court's retention of jurisdiction over a matter that was properly before it generally is governed by Rule 1:1. Rule 1:1 provides, in pertinent part, that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." The running of the twenty-one-day period commences with the entry of the final order and "may be interrupted only by the entry, within the 21-day period after final judgment, of an order suspending or vacating the final order." James v. James, 263 Va. 474, 482, 562 S.E.2d 133, 137 (2002) (internal quotation marks and citations omitted). "Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1 . . . ." School Bd. v. Caudill Rowlett Scott, Inc., 237 Va. 550, 556, 379 S.E.2d 319, 323 (1989) (internal citations omitted). Unless a court vacates or suspends a final order during the twenty-one-day period or some other exception to the general rule applies, the court loses jurisdiction over the case and any action taken by the trial court after the twenty-one-day period has run is a nullity. James, 263 Va. at 483, 562 S.E.2d at 138; Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996).

---

[5] Appellant's motion to withdraw his guilty pleas was filed pursuant to Code § 19.2-296, which provides that "[a] motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea." There is no question that the motion was filed after the sentence was imposed. Thus, appellant was proceeding under the portion of the statute that allows a plea to be withdrawn, upon a showing of manifest injustice, within twenty-one days of entry of the final order. Because the statutory time period and Rule 1:1's period of continuing jurisdiction are coterminous, Code § 19.2-296 does not alter the jurisdictional analysis.

B.  The November 23, 2015 Sentencing Order is a Final Order

"A final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order."  Daniels v. Truck & Equip. Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964) (internal quotation marks and citations omitted).  Although it later was found to suffer from an omission with respect to the recitation of the charges/convictions, the November 23, 2015 sentencing order clearly meets this standard.  It resolved the pending charges and specified the total sentence imposed, including the total term of years, the years suspended, the fines, and the period of post-release supervision.  Simply put, there was nothing left for the trial court to do after it entered the order on November 23, 2015.  Accordingly, unless an exception applies, any actions of the trial court after December 14, 2015, twenty-one days after entry of the order, were nullities.

C.  Code § 8.01-428(B) and the Power to Enter an Order *Nunc Pro Tunc* are
Limited Exceptions to the Finality Imposed by the Operation of Rule 1:1

Although the finality imposed by Rule 1:1 generally governs, there are circumstances in which a trial court may exercise limited jurisdiction beyond the twenty-one-day period.  For example, Code § 8.01-428(B) provides a limited exception to the finality imposed by Rule 1:1.  Specifically, Code § 8.01-428(B) provides that "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative."  Thus, pursuant to Code § 8.01-428(B), a trial court has jurisdiction after Rule 1:1's twenty-one-day period has run for the "limited purpose" of correcting errors and omissions in previously entered orders and other portions of the record.  Belew v. Commonwealth, 284 Va. 173, 178, 726 S.E.2d 257, 259 (2012).

Furthermore, as the Supreme Court has recognized, a trial court has "the inherent power, independent of statutory authority, to correct errors in the record so as to cause its acts and proceedings to be set forth correctly. In short, the court has the inherent power, independent of the statute, upon any competent evidence, to make the record 'speak the truth.'" Davis, 251 Va. at 149, 466 S.E.2d at 94. Such a corrective order, whether entered pursuant to statute or as a result of a court's inherent authority, is often referred to as an order *nunc pro tunc*.[6] See Dorn v. Dorn, 222 Va. 288, 291, 279 S.E.2d 393, 394 (1981).

Although the January 6, 2016 "amended order" does not reference Code § 8.01-428(B) and does not contain the phrase "*nunc pro tunc*," the parties correctly agree that it is such an order. There is no dispute that appellant pled guilty to, was convicted of, and sentenced for a rape of a child in Case No. CR15-56 and that all the January 6, 2016 amended order did was correct the "inadvertent omission," Code § 8.01-428(B), of those details from the November 23, 2015 order so that the January 6, 2016 opinion now "'speak[s] the truth,'" Davis, 251 Va. at 149, 466 S.E.2d at 94, about what actually occurred in the proceedings before the trial court when it had jurisdiction over the case. In sum, because it was only correcting a clerical error in the November 23, 2015 final order, the trial court was authorized to enter the January 6, 2016 order despite the fact that more than twenty-one days had passed since it had entered the final order on November 23, 2015.

The fact that the trial court was authorized to enter the January 6, 2016 order for this "limited purpose," Belew, 284 Va. at 178, 726 S.E.2d at 259, did not vest the trial court with jurisdiction to do anything else regarding the case, including consider appellant's motion to withdraw his guilty pleas. As the Supreme Court has noted,

---

[6] "*Nunc pro tunc*" literally means "now for then." In issuing a corrective order, a trial court is memorializing "now" what it did "then."

> [w]hen acting *nunc pro tunc*, the court does not reacquire jurisdiction over the case. Rather, the trial court merely corrects the record by entry of an order *nunc pro tunc*, *under the accepted fiction that the order relates back to the date of the original action of the court "now for then."* Nonetheless, we have carefully noted that the power to amend should not be confounded with the power to create. While the power is inherent in the court, it is restricted to placing upon the record evidence of judicial action which has actually been taken, and *presupposes action taken at the proper time*.

Davis, 251 Va. at 149, 466 S.E.2d at 94 (internal quotation marks and citations omitted) (emphasis added). To hold otherwise, "would render meaningless the mandate of Rule 1:1 and would do great harm to the certainty and stability that the finality of judgments brings." Id. at 150, 466 S.E.2d at 94.[7]

Because the trial court did not reacquire plenary jurisdiction over the case when it exercised its limited jurisdiction to enter the corrective order on January 6, 2016, it was without jurisdiction to consider appellant's motion to withdraw his guilty pleas. Accordingly, we are without jurisdiction to consider the issues raised by appellant in the appeal. See Southerly, 262 Va. at 299, 551 S.E.2d at 653.

## CONCLUSION

For the foregoing reasons, the trial court lacked jurisdiction to consider appellant's motion to withdraw his guilty pleas, and thus, we lack jurisdiction to consider his appeal regarding the denial of that motion. Accordingly, we dismiss the appeal.

Dismissed.

---

[7] That the trial court did not actually date the January 6, 2016 order as if it had been entered on November 23, 2015 does not affect the analysis. The trial court's authority to enter the corrective order is premised on the legal fiction that the new order dates from the time when the trial court had jurisdiction. Absent that fiction, the trial court could not have entered the corrective order.