COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges O'Brien and Russell
Argued at Richmond, Virginia

COMMONWEALTH OF VIRGINIA

v.      Record No. 1350-17-2

LUTHER GEORGE BERRY, III

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.
DECEMBER 27, 2017

FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
James F. D'Alton, Judge Designate

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

(David Lassiter, Jr., on brief), for appellee. Appellee submitting on
brief.

Luther George Berry, III was indicted for violating Code § 18.2-248 for his alleged

possession of cocaine with the intent to distribute. At a pretrial hearing, the circuit court granted

Berry's motion to suppress the cocaine that had been discovered as a result of a search of his person.

Pursuant to Code § 19.2-398(A)(2), the Commonwealth attempts to appeal the circuit court's ruling

suppressing the evidence. For the reasons that follow, we dismiss the appeal.

BACKGROUND[1]

On April 24, 2015, Berry was a passenger in a car that was stopped by police for having a

cracked windshield. After the car was stopped, Berry was removed from the vehicle and searched.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Given our dismissal of the appeal, we limit our recitation of the facts to those necessary
to explain that resolution. We express no opinion regarding the merits of the circuit court's
ruling on the motion to suppress.

As a result of the search, police discovered a substance believed to be cocaine. Berry was subsequently charged with possession of cocaine with the intent to distribute.

Berry first filed a motion to suppress on May 12, 2017. In it, he moved the circuit court to "prohibit[] the introduction of any physical evidence seized and statements obtained as a result of an unlawful search of the defendant and his immediate person." He asserted that the police had lacked "reasonable, articulable suspicion to stop the vehicle to investigate further whether the crack violated the law" and that "[t]he stop, detention and search of the defendant as aforesaid were unlawful in violation of [his] rights under the Fourth Amendment to the United States Constitution."

Berry filed a second motion to suppress on May 18, 2017, in which he sought to suppress the "introduction of any evidence seized in, or as a result of, a search of [the] vehicle and [his] person in violation of the [Fourth] Amendment to the United States Constitution and Article 1, Section 10 of the Virginia Constitution." After noting the traffic stop, removal of passengers, and search of defendant, the motion alleged that "[a]s a result of the unlawful detention, contraband was ultimately retrieved from [his] person" and that "[t]here were no exigent circumstances present which necessitated the immediate seizure and subsequent search of [the] vehicle without the officer first establishing a reasonable suspicion or probable cause to believe that the defendant and/or the vehicle were involved in criminal activity." Berry again requested "that the item and statements obtained as a result of this illegal search and seizure be suppressed and their admission into evidence at trial be prohibited." In neither motion did Berry request that the circuit court dismiss the charge against him.

The circuit court held a suppression hearing on May 24, 2017. At the outset of the hearing, the Commonwealth queried whether Berry's "motion to suppress was solely limited to the stop of the vehicle." Berry responded, "it is alleged in [the officer's] police report that [the defendant] was stopped due to a cracked windshield. So my motion simply focuses on whether or not [there] was

reasonable suspicion to stop it based on him simply -- seeing his report that says cracked windshield, with no other issue." The court then stated, "So, it's limited." The Commonwealth confirmed, "If that's the entire scope of the motion to suppress, the Commonwealth is ready to proceed." Berry made no further comment at that time, and the court proceeded to take evidence on the motion.[2]

Ultimately, the circuit court found that, based on the evidence, the police had lacked a sufficient basis to stop the car. As a result, the circuit court stated that it was "sustain[ing] the motion to suppress based on the stop."

The circuit court memorialized its ruling granting the motion to suppress in an order entered on June 8, 2017. Although Berry had not yet sought dismissal of the charge, the order states that the court had "granted the defense [m]otion to [s]uppress and [that] the [c]ourt hereby dismissed the . . . charge."

On June 14, 2017, the Commonwealth made two filings in the circuit court. It filed a notice of appeal, appealing to this Court "from the [o]rder [g]ranting [Berry's] [m]otion to [s]uppress . . . entered on the [eighth] of June, 2017." Simultaneously, it filed a document it had entitled "Motion to Modify Order and/or Reconsider Dismissal." In that motion, the Commonwealth argued that the circuit court's dismissal of the charge "preclude[d] the Commonwealth from pursuing an appeal" regarding the ruling on the motion to suppress. Accordingly, the Commonwealth requested that the circuit court "modify" the June 8, 2017 order by "strik[ing] the language concerning the dismissal of the charge," or, in the alternative, that the circuit court "reconsider" its decision to dismiss the charge. In its motion, the Commonwealth requested neither that the circuit court revisit its substantive ruling on the suppression motion nor suspend the June 8, 2017 order pending a ruling on

---

[2] Later in the hearing, Berry argued that he had not limited the motion to the stop of the vehicle and was allowed to argue other grounds for suppression. The circuit court did not reach the issue, premising its ruling on its conclusion regarding the legality of the stop of the vehicle.

- 3 -

the motion. Notably, the Commonwealth did not assert that the dismissal of the charge in the June 8, 2017 order constituted a clerical error.

On July 26, 2017, the circuit court held a hearing on the Commonwealth's motion. At the hearing, the circuit court noted that Berry had never requested that the case be dismissed and that the only matters before it at the May 24, 2017 hearing were Berry's motions to suppress. From the bench, the circuit court stated that it "would correct the order" and would ensure that "the dismissal language is deleted from the order."

The circuit court entered an order memorializing this ruling on August 3, 2017. In this order, the circuit court stated that its prior order of June 8, 2017 "erroneously dismissed the case." As a result, the August order provided that "the [c]ourt grants the Commonwealth's [m]otion to [r]econsider the [d]ismissal and vacates the dismissal portion of the order entered on June 8, 2017." The order also confirmed the circuit court's original ruling suppressing the evidence.

On August 9, 2017, the Commonwealth noted its appeal of the August 3, 2017 order. The same day, the Commonwealth also filed a motion in this Court seeking to withdraw its appeal of the June 8, 2017 order. By order entered November 16, 2017, this Court dismissed the motion to withdraw the appeal. We noted that "the Commonwealth did not timely file a petition for appeal" in relation to the appeal of the June 8, 2017 order, and therefore, concluded that we were "without jurisdiction to consider the appeal or the motion to withdraw" the appeal of the June 8, 2017 order. Commonwealth v. Berry, No. 0949-17-2 (Va. Ct. App. Nov. 16, 2017). Accordingly, the issue before us is limited to the Commonwealth's attempt to appeal the circuit court's August 3, 2017 order.

ANALYSIS[3]

I. Circuit Court's Authority to Enter the August 3, 2017 Order

Before addressing whether the Commonwealth's attempted appeal of the August 3, 2017 order complied with the statutory requirements governing such appeals, we must determine whether the circuit court had jurisdiction to enter the August 3, 2017 order in the first instance. If the circuit court lacked such jurisdiction, the August 3, 2017 order is a nullity, leaving us nothing to review on appeal. Minor v. Commonwealth, 66 Va. App. 728, 738, 791 S.E.2d 757, 762 (2016).

A. Rule 1:1

In general, a circuit court's retention of jurisdiction over a matter that was properly before it is governed by Rule 1:1. Rule 1:1 provides, in pertinent part, that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." In turn, "[a] final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." Daniels v. Truck & Equip. Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964) (internal quotation marks and citations omitted).

It is well established that "[a] court speaks through its orders." Wilson v. Commonwealth, 67 Va. App. 82, 94, 793 S.E.2d 15, 21 (2016). Whether intended by the circuit

_____

[3] Whether an appeal is properly before an appellate court is a question reserved for appellate courts. Minor v. Commonwealth, 66 Va. App. 728, 737-38, 791 S.E.2d 757, 761 (2016). The circuit court did not address whether the Commonwealth's appeal in this case comported with the requirements of the statutory scheme. Accordingly, in determining whether the appeal properly is before us, we are not "reviewing" a decision of the circuit court, but rather, address the question in the first instance.

court or not, its June 8, 2017 order is, on its face, a final order. The order addressed not only the ruling on the motion to suppress, but also expressly dismissed the charge. Absent some subsequent action altering the effect of the order, it brought the case to a close and left nothing more to be done. Thus, it was a final order for the purposes of Rule 1:1.

As noted above, the Commonwealth never sought and the circuit court never entered an order suspending the June 8, 2017 order to allow the circuit court to consider the Commonwealth's motion to reconsider the dismissal. Absent such an order, the 21-day period continued to run despite the Commonwealth's filing of the motion to reconsider. Sch. Bd. v. Caudill Rowlett Scott, Inc., 237 Va. 550, 556, 379 S.E.2d 319, 323 (1989) ("Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1." (internal citations omitted)). Accordingly, unless an exception to Rule 1:1 applies, the circuit court was without jurisdiction to enter the August 3, 2017 order.[4]

### B. Code § 19.2-400

A limited exception to Rule 1:1 is found in Code § 19.2-400. In pertinent part, Code § 19.2-400 provides that "[u]pon the filing of a timely notice of appeal, the order from which the pretrial appeal is taken and further trial proceedings in the circuit court, except for a

---

[4] At oral argument in this Court, the Commonwealth asserted that the portion of the June 8, 2017 order dismissing the charge represented a clerical error and that the August 3, 2017 order was entered to correct that error pursuant to Code § 8.01-428(B), which allows a court to enter a corrective order after Rule 1:1's 21-day period has run. See Minor, 66 Va. App. at 740-41, 791 S.E.2d at 763. Given our conclusion that the filing of the notice of appeal tolled the 21-day period, we need not determine whether the dismissal of the charge constituted a clerical error for purposes of Code § 8.01-428(B). We note, however, that if it were, the appellate deadlines would run from the June 8, 2017 order and not the August 3, 2017 order. Id. at 742 n.7, 791 S.E.2d at 763 n.7.

bail hearing, shall thereby be suspended pending disposition of the appeal." We previously have

noted that

> Code § 19.2-400, when read along with Rule 1:1, operates to
> suspend both the efficacy and the finality of a trial court's order
> during the pendency of a Commonwealth's appeal. The effect of
> this provision is to toll the finality of the order as surely as if the
> trial court had entered an order vacating or suspending its order.

Commonwealth v. DeBusk, No. 0213-08-3, 2008 Va. App. LEXIS 268, at *11 (Va. Ct. App.

June 3, 2008).[5] Consistent with the statute and our decision in DeBusk, the Commonwealth's

filing of the notice of appeal on June 14, 2017 operated as a suspending order that tolled the

running of Rule 1:1's 21-day period. Accordingly, the circuit court did not lose jurisdiction over

the case twenty-one days after entry of the June 8, 2017 order.

By the express terms of Code § 19.2-400, the Commonwealth's notice of appeal not only

suspended the June 8, 2017 order, but also suspended "further trial proceedings in the circuit

court, except for a bail hearing." Although this language suggests that a circuit court is without

authority to conduct further proceedings other than a bail hearing, we previously have held to the

contrary. Specifically, in West v. Commonwealth, 16 Va. App. 679, 685, 432 S.E.2d 730, 734

(1993), a panel of this Court stated as follows:

> We do not construe the language of Code § 19.2-400 to
> preclude the circuit court from reconsidering an order merely
> because the Commonwealth has filed a notice of appeal in the
> circuit court. The language of the statute simply provides that once
> a timely notice of appeal is filed, the order being appealed may not
> be enforced and the circuit court may not proceed to trial. By its
> own terms, this statute specifically "suspends" further proceedings
> pending the disposition of the appeal. From this language, the
> legislature clearly intended to prohibit the circuit court from giving
> effect to the order being appealed and from proceeding with the
> trial while the Commonwealth is challenging the pretrial order.
> Thus, the purpose of this statute is to prevent a circuit court from

---

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012).

> defeating the ability of the Commonwealth to pursue its appeal
> once the appeal is properly noted.

Under the interpanel accord doctrine, we are bound by this construction of the statute. See

Prekker v. Commonwealth, 66 Va. App. 103, 110, 782 S.E.2d 604, 607 (2016). Consequently,

we must conclude that Code § 19.2-400 did not prevent the circuit court from entertaining and

ruling upon the Commonwealth's motion to reconsider.

Because neither Rule 1:1 nor Code § 19.2-400 prevented the circuit court from

entertaining and ruling on the Commonwealth's motion to reconsider, the circuit court had the

authority to issue its August 3, 2017 order.

## II. Commonwealth's Appeals

Pursuant to Article VI, Section 1 of the Constitution of Virginia, "[t]he General

Assembly may allow the Commonwealth the right to appeal in all cases, including those

involving the life or liberty of a person, provided such appeal would not otherwise violate this

Constitution or the Constitution of the United States." Consistent with this authority, the General

Assembly has enacted Chapter 25 of Title 19.2, which delineates the circumstances in which the

Commonwealth may appeal a pretrial ruling in a felony case and the procedures that the

Commonwealth must follow if it pursues such an appeal. See Code § 19.2-398 et seq.

Whether a particular appeal comports with the substantive and procedural requirements

set forth in the statutory scheme presents a question of statutory construction. When faced with

such a question, "our primary objective is 'to ascertain and give effect to legislative intent,' as

expressed by the language used in the statute." Cuccinelli v. Rector & Visitors of the Univ. of

Virginia, 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting Commonwealth v. Amerson,

281 Va. 414, 418, 706 S.E.2d 879, 882 (2011)) (further citation and internal quotation marks

omitted). In doing so, we "give statutory language its plain meaning," Davenport v.

Little-Bowser, 269 Va. 546, 555, 611 S.E.2d 366, 371 (2005), recognizing that we are to view the

- 8 -

words of the statute in "the context in which they are used," <u>City of Virginia Beach v. Bd. of Supervisors</u>, 246 Va. 233, 236, 435 S.E.2d 382, 384 (1993) (quoting <u>Grant v. Commonwealth</u>, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982)).  Furthermore, because the Commonwealth's right to appeal is in derogation of the general prohibition against such appeals, the statutory requirements "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute."  <u>Commonwealth v. Hawkins</u>, 10 Va. App. 41, 44, 390 S.E.2d 3, 5 (1990) (quoting <u>Crews v. Commonwealth</u>, 3 Va. App. 531, 536, 352 S.E.2d 1, 3 (1987)).

In pertinent part, Code § 19.2-398(A)(2) allows the Commonwealth to file "a pretrial appeal" regarding a circuit court's ruling on a motion to suppress evidence that was obtained in violation of the Fourth Amendment.  The Commonwealth contends that, because the August 3, 2017 order states that the circuit court "grants the relief sought in [Berry's] [m]otion to [s]uppress in which the evidence obtained from the illegal search and seizure is prohibited from being introduced at trial," the appeal is permitted by the statutory scheme.

Although we agree that Code § 19.2-398(A)(2) authorizes appeals of such suppression rulings in the abstract, we conclude that the statutory scheme does not permit the Commonwealth's attempted appeal of the August 3, 2017 order in this case.  Our conclusion stems from our determination that the statutory scheme allows the Commonwealth to file one, but only one, appeal in response to a circuit court's granting of a motion to suppress.

We first note that Code § 19.2-398(A) allows the Commonwealth "*a pretrial appeal from . . . an order.*" (Emphasis added).[6] Although in construing statutory language the singular can include the plural, see Code § 1-227, the context provided by the remainder of the statutory scheme strongly suggests that the use of the singular here was intended to limit the Commonwealth to only one appeal of a suppression ruling. A contrary conclusion would frustrate rather than further the purpose of the statutory scheme.

We repeatedly have held that, when read as a whole, the statutory scheme grants the Commonwealth a limited right to appeal and that the "the purpose of the statutory scheme . . . is to facilitate a 'prompt determination of whether a prosecution can effectively move forward or whether a defendant should be released.'" Commonwealth v. Spinola, No. 0535-15-4, 2015 Va. App. LEXIS 252, at *14-15 (Va. Ct. App. Sept. 8, 2015) (quoting Commonwealth v. Mitchell, No. 0741-13-3, 2013 Va. App. LEXIS 251, at *8 (Va. Ct. App. Sept. 10, 2013)). This understanding stems from numerous instances in the statutory scheme where the General Assembly has required that issues related to Commonwealth's appeals be resolved promptly. For example, to initiate an appeal pursuant to Code § 19.2-398, the Commonwealth must note its appeal within seven days of the circuit court's order, Code § 19.2-400, while a party normally has thirty days to note an appeal, Rule 5A:6(a). Unlike other appeals for which no deadline is specified, this Court must grant or deny a Commonwealth's petition for pretrial appeal taken pursuant to Code § 19.2-398 within thirty days of the filing of the brief in opposition. Code

---

[6] We acknowledge that the circuit court issued two orders that memorialized its ruling regarding suppression of the evidence; however, it issued but one substantive ruling. Neither the Commonwealth's motion to reconsider nor the July 26, 2017 hearing that resulted in the August 3, 2017 order addressed the substance of the circuit court's suppression ruling. Rather, the only issue raised was the inclusion of language dismissing the charge in the first order. The inclusion of language regarding suppression in the August 3, 2017 order was simply the circuit court restating what it had already ordered. Accordingly, only one substantive ruling regarding suppression was made, and it was made in the order of June 8, 2017.

§ 19.2-403. Once a petition in a Commonwealth's appeal taken pursuant to Code § 19.2-398 is granted, the parties are faced with an accelerated briefing schedule. Compare Code § 19.2-404 with Rule 5A:19(c). Additionally, the General Assembly has required that, once we grant such a petition for appeal, we must "accelerate the appeal on [our] docket and render [our] decision not later than 60 days after the filing of the appellee's brief or after the time for filing such brief has expired." Code § 19.2-404. There is no similar requirement in other appeals that come to us through the petition process. Unlike other appellants in criminal appeals, the Commonwealth may not seek rehearing if we deny the petition for appeal. Compare Code § 19.2-403 with Code § 17.1-407(D). Once we grant a Commonwealth's petition for appeal brought pursuant to Code § 19.2-398, neither party may seek rehearing of our ultimate decision.[7] Compare Code § 19.2-404 with Rules 5A:33 and 5A:34. Finally, if we rule against the Commonwealth in an appeal brought by the Commonwealth pursuant to Code § 19.2-398, the Commonwealth may not seek review of that decision in the Supreme Court. Code § 17.1-410(A)(4).

Read as a whole, it is clear that the Commonwealth's right to appeal is limited and must be pursued expeditiously or not at all. From this, we conclude that the Commonwealth is entitled to only one opportunity to appeal a circuit court's substantive ruling on a motion to suppress. To allow the Commonwealth multiple bites at the same appellate apple would render the above-referenced deadlines essentially meaningless. The Commonwealth, benefitting from Code § 19.2-400's automatic tolling upon the filing of a notice of appeal, could delay the proceedings indefinitely by filing multiple motions to rehear in the circuit court with the

---

[7] Although a defendant is not permitted to seek rehearing if we reverse a trial court's granting of a motion to suppress, he is permitted to raise the suppression issue on direct appeal if he is convicted after remand. See Code §§ 17.1-410(A)(4) & 19.2-409; Cole v. Commonwealth, ___ Va. ___, ___, 806 S.E.2d 387, ___ (2017).

- 11 -

appellate clock effectively not running until the circuit court disposed of the last of said motions.[8]

Here, the Commonwealth timely noted an appeal of the June 8, 2017 order when it filed its notice of appeal on June 14, 2017. The appellate deadlines began to run, and the Commonwealth was free to pursue that appeal to its conclusion. Based on an apparent misunderstanding of the law,[9] the Commonwealth abandoned that appeal when it failed to timely file the required petition for appeal, leaving this Court with no choice but to dismiss that appeal. Berry, No. 0949-17-2 (Va. Ct. App. Nov. 16, 2017). Consistent with our construction of the statutory scheme, that abandoned appeal was the Commonwealth's one appeal of the suppression ruling in this case, and therefore, the current appeal is not properly before us.[10]

---

[8] We do not suggest that the Commonwealth was engaged in such dilatory tactics in this case. Rather, we recognize that a contrary interpretation would allow such tactics and frustrate the deadlines in the statutory scheme. Accordingly, the possibility of such mischief informs our construction of the statutory scheme.

[9] In abandoning the initial appeal, the Commonwealth mistakenly asserted that it "could not proceed" with the appeal because the June 8, 2017 order not only granted the motion to suppress, which could be appealed, it dismissed the charge, which could not be appealed. We previously have held that a circuit court's erroneous inclusion of language dismissing a charge in an order granting a motion to suppress does not prevent the Commonwealth from appealing the suppression ruling. DeBusk, 2008 Va. App. LEXIS 268, at *12-13 ("Upon the Commonwealth's filing of its notice of appeal, the entire order--including the portion dismissing the indictments--was suspended by operation of Code § 19.2-400. Because the dismissal order was suspended by operation of the statute . . . , the matter remained within the jurisdiction of the trial court. The [trial court's] order [dismissing the indictments] is subject to being vacated or modified by the trial court based upon our conclusion regarding the motion to suppress."); see also Commonwealth v. Lane, No. 0318-99-2, 1999 Va. App. LEXIS 476, at *2 n.2 (Va. Ct. App. Aug. 3, 1999). We reiterate those holdings here.

[10] Nothing we say today should be read as anything more than, when a circuit court issues a ruling on a motion to suppress, the Commonwealth is limited to one appeal of that ruling. If the circuit court conducted multiple suppression hearings resulting in multiple, distinct orders suppressing evidence, the Commonwealth would not be limited to one appeal, but rather, would be limited to one appeal regarding each distinct ruling. Here, as noted above, there was only one substantive ruling related to suppression.

- 12 -

CONCLUSION

For the foregoing reasons, we conclude that the Commonwealth's attempted appeal of the

August 3, 2017 order is not properly before us.  Accordingly, we dismiss the appeal.

<u>Dismissed.</u>