COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Callins and Frucci
Argued at Lexington, Virginia

MICHAEL ANTHONY CERILLO

MEMORANDUM OPINION[*] BY
v.      Record No. 0559-24-3          JUDGE STEVEN C. FRUCCI
                                       JULY 29, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

John S. Koehler (The Law Office of James Steele, PLLC, on brief),
for appellant.

Sandra W. Workman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the circuit court convicted Michael Anthony Cerillo of second-degree

murder and use of a firearm in the commission of a felony.[1]  On appeal, Cerillo contends that the

circuit court erred by "failing to set aside the verdict and ordering a new trial where the

Commonwealth made improper reference to Cerillo's exercising of his Fifth Amendment right

against self-incrimination."  He also contends that the circuit court "erred in *sua sponte* entering a

revised sentencing order more than 21 days after entry of the final judgment."  For the reasons

stated below, we affirm the circuit court's judgment.[2]

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Cerillo pleaded guilty to and was convicted of possessing a firearm as a non-violent
felon.  He does not assign error to that conviction.

[2] The amended sentencing order entered June 3, 2024, mistakenly states that Cerillo
entered guilty pleas to the charges of second-degree murder and use of a firearm in commission
of a felony.  Accordingly, we remand the case to the circuit court for the limited purpose of
correcting the clerical error.  *See* Code § 8.01-428(B).

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "This well-settled principle of appellate review 'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."'" *Wandemberg v. Commonwealth*, 70 Va. App. 124, 133 (2019) (quoting *Camp v. Commonwealth*, 68 Va. App. 694, 698 (2018)).

In 2022, Cerillo and Steven Allen Hendricks, Jr., worked together to distribute marijuana. Marijuana was shipped to Hendricks's grandmother's house, and Cerillo would retrieve it from Hendricks there and then sell it. Cerillo compensated Hendricks by giving him money and either marijuana or methamphetamine. Cerillo picked up a shipment on July 5, 2022, and discovered that six containers were missing from the box. Hendricks suggested that R.S.[3] may have stolen it, because he had been at Hendricks's house and was "very well known as a thief."

Cerillo asked Hendricks to bring a gun, and the two went to confront R.S. As Cerillo drove towards R.S.'s neighborhood, he saw R.S. driving and blew his horn. In response, R.S. "took off like a crazy man" and Cerillo followed. Cerillo reached R.S.'s car, and he pointed Hendricks's gun at R.S. to force him to stop. Eventually, R.S. pulled to the side of the road. Cerillo blocked R.S.'s car and then approached. Cerillo asked Hendricks to not let him kill R.S. "if [Cerillo went] crazy." Cerillo and R.S. cursed at each other, and R.S. denied having taken "anything from anybody." Witnesses saw Cerillo shoot the unarmed R.S., striking R.S. in the head and killing him. Cerillo then fled to North Carolina and hid his truck on a friend's property. He also instructed Hendricks to "erase all messages."

---

[3] We use initials, rather than names, to protect the privacy of the victim.

At trial, Cerillo confirmed the business arrangement he had with Hendricks. Cerillo admitted that he asked Hendricks to bring a gun and then went looking for R.S., but he denied intending to kill R.S., claiming that he was afraid of R.S. Cerillo stated that R.S. first spoke with Hendricks and then charged at Cerillo and tried to choke him. Cerillo "dug down" and the gun fired, striking R.S. Cerillo admitted that he did not call for help after the shooting and instead fled to North Carolina.

During cross-examination, the prosecutor questioned Cerillo if he "thought about what [he would] tell the jury in the hopes of getting out of this charge . . . ?" After a brief bench conference, the prosecutor continued, asking Cerillo if he had talked to anyone about what he would tell the jury. Cerillo acknowledged that he had spoken about the case to his attorney. Outside the presence of the jury, Cerillo argued that the prosecution improperly commented on his Fifth Amendment right to remain silent and that by questioning him about his silence during the nine months between his arrest and his trial, the Commonwealth violated his constitutional rights. In the bench conference, Cerillo claimed that any questions about "his ability to remain silent for these nine months invades his right to remain silent." The Commonwealth emphasized that the questions did not pertain to Cerillo's refusal to talk to the police after his arrest. The circuit court concluded that they would just "move on." Back in front of the jury, the Commonwealth questioned Cerillo about his actions immediately following the shooting, including his failing to tell his wife or anyone else about the incident. At the time, Cerillo did not ask for a limiting instruction or move for a mistrial.

After the close of the evidence, Cerillo moved to strike the evidence, arguing in part that the Commonwealth had inappropriately commented on his right to remain silent. He requested the question about whether he had spoken to anyone about what he would say to the jury and the answer given be struck from the record. He did not move for a mistrial and emphasized to the circuit court that all he wanted was to "strike that particular question and response." The circuit

court ruled that Cerillo's rights had not been violated, as they moved on from the line of questioning and the question did not involve his right to remain silent.

Later, Cerillo sought a jury instruction on imperfect self-defense, which the circuit court granted. Ultimately, the jury found Cerillo guilty of second-degree murder and use of a firearm in the commission of a felony.

Several days after the jury returned its verdict, Cerillo moved for the circuit court to set aside the verdict. In his motion, Cerillo again argued that the Commonwealth improperly questioned him about his silence following the shooting and asked for a new trial. At the hearing on the motion, Cerillo alleged that the prosecutor's questions were "a trial strategy in order to get [him] to comment on his post arrest silence." Cerillo's counsel admitted that he never moved for a mistrial prior to the jury rendering its verdict. The Commonwealth responded that the questions about having spoken to anybody about the incident were "within the context of a body of questioning" about Cerillo's actions after the incident as he had been testifying about his actions being in self-defense. The Commonwealth emphasized that the prosecution never questioned Cerillo about whether he refused to speak to the police after being advised of his rights. The circuit court denied the defense motion, finding that none of the objected-to questions pertained to any statements Cerillo made or did not make to the police. The circuit court emphasized how Cerillo never moved for a mistrial and how his attorney thanked the circuit court for moving the Commonwealth away from the objected-to line of questioning and did not ask the circuit court to do anything else.

At sentencing, the circuit court stated that Cerillo was sentenced to 40 years of incarceration for the murder, with all but 22 years suspended. On the use of the firearm in commission of a felony charge, the circuit court sentenced Cerillo to three years with no time suspended. On the conviction for possession of a firearm by a non-violent felon, the circuit court sentenced Cerillo to

- 4 -

five years with all but two years suspended.  The sentencing order entered on March 19, 2024, included the circuit court's stated sentence in the body of the order; however, the sentencing summary at the end of the order indicated that the total sentence imposed was 48 years and that 27 years were suspended with a total of 21 years of active time to serve, thus reversing the suspended time and active time from what the court pronounced.  The Department of Corrections noted the discrepancy and asked the circuit court to update the order "as needed."  In response, on June 3, 2024, the circuit court entered a corrected order to comport with the stated sentence, under Code § 8.01-428.  Cerillo appeals.

ANALYSIS

I.  The Motion to Set Aside the Verdict[4]

Cerillo contends "[t]he circuit court erred in failing to set aside the verdict and ordering a new trial where the Commonwealth made improper reference to Cerillo's exercising of his Fifth Amendment right against self-incrimination."[5]  "Virginia law makes clear that 'errors assigned

---

[4] While styled as a motion to set aside the verdict, Cerillo in fact sought to have the circuit court declare a mistrial based on the prosecution's alleged impropriety.  The circuit court treated the motion as one for a mistrial and so do we.  *See, e.g.*, *Mu'Min v. Commonwealth*, 239 Va. 433, 441 n.2 (1990) ("It is of no consequence that both Mu'Min and the Commonwealth labelled their pleadings as motions for bills of particulars.  The titles are irrelevant; judged by their substance, the two pleadings are motions for discovery."); *Glenn v. Brown*, 99 Va. 322, 326 (1901) ("[T]he practice in Virginia . . . is to disregard the mere names of things, and to consider and apply their substance.").

[5] In addition to arguing that a question asked of Cerillo during cross-examination was improper, Cerillo also, on appeal, argues that the Commonwealth improperly referenced Cerillo exercising his Fifth Amendment rights during closing arguments in a PowerPoint.  However, he never objected or moved for a mistrial during closing arguments.  "In order to avoid a waiver, a mistrial motion must be made 'when the objectionable words were spoken.'"  *Harvey v. Commonwealth*, 76 Va. App. 436, 458-59 (2023) (quoting *Yeatts v. Commonwealth*, 242 Va. 121, 137 (1991)).  "If defense counsel 'believes that an argument requires or justifies a mistrial, he has the duty to [make a mistrial motion] promptly before the conclusion of the argument.'"  *Id.* (quoting *Bennett v. Commonwealth*, 29 Va. App. 261, 281 (1999)).  As Cerillo did not object to any statements made during closing argument, he has waived his right to assign error to those statements.  Additionally, this Court would be unable to review the statements as the PowerPoint was not made part of the record.

because of a prosecutor's improper comments . . . during argument will not be considered on appeal unless the accused timely moves for a cautionary instruction or for a mistrial." *Harvey v. Commonwealth*, 76 Va. App. 436, 458 (2023) (alteration in original) (quoting *Martinez v. Commonwealth*, 241 Va. 557, 559 n.2 (1991)). "In order to avoid a waiver, a mistrial motion must be made 'when the objectionable words were spoken.'" *Id.* (quoting *Yeatts v. Commonwealth*, 242 Va. 121, 137 (1991)). "If defense counsel 'believes that an argument requires or justifies a mistrial, he has the duty to [make a mistrial motion] promptly *before the conclusion of the argument*.'" *Id.* (alteration in original) (quoting *Bennett v. Commonwealth*, 29 Va. App. 261, 281 (1999)). "This rule applies even where the defendant makes an objection to the argument that is overruled by the trial court." *Id.*

> In short, to preserve an objection to allegedly improper argument made by the prosecution, defense counsel must object contemporaneously, state the basis for the objection, "articulate . . . clearly the action he desire[s] the court to take" (i.e., grant a mistrial or give a cautionary instruction), and point out "that the action need[s] to be taken before the jury retire[s]."

*Id.* at 458-59 (alterations in original) (quoting *Maxwell v. Commonwealth*, 287 Va. 258, 268-69 (2014)). Furthermore, "[a] motion for a mistrial is untimely and is properly refused when it is made after the jury has retired from the courtroom." *Schmitt v. Commonwealth*, 262 Va. 127, 148 (2001) (stating also that "unless a defendant has made a timely motion for a cautionary instruction or for a mistrial, we will not consider his assignments of error alleging that improper remarks were made by the prosecutor"). [6]

---

[6] "Making a timely motion for mistrial means making the motion 'when the objectionable words were spoken.'" *Yeatts*, 242 Va. at 137 (quoting *Reid v. Baumgardner*, 217 Va. 769, 774 (1977)). "If counsel believes that an argument requires or justifies a mistrial, he has the duty to move promptly before conclusion of the argument so that the trial court may determine what corrective action, if any, should be taken." *Pullen v. Nickens*, 226 Va. 342, 346-47 (1983). *See Beavers v. Commonwealth*, 245 Va. 268, 278-79 (1993) (holding that a complainant's failure to object and move for a mistrial until the conclusion of an opening statement constituted a waiver

In this case, at the time the question at issue occurred, Cerillo did not ask for a curative instruction nor move for a mistrial. In fact, Cerillo did not request a mistrial until days after the jury rendered its verdict.[7] "If . . . [a] party does not simply disagree with the action of the trial court, but seeks the trial court to take action, that action must be expressly sought." *Parker v. Commonwealth*, 14 Va. App. 592, 596 (1992) (finding that "even though the defendant voiced an objection, his failure to seek a mistrial or other action by the trial court prevents considering [the] error as a basis for a reversal"). As Cerillo did not request a mistrial prior to the jury rendering its verdict, he has waived his right to assign error to the court's denial of his request for a new trial.

II. The Amended Sentencing Order

Cerillo asserts that the circuit court "erred in *sua sponte* entering a revised sentencing order more than 21 days after entry of the final judgment." "A circuit court's retention of jurisdiction over a matter that was properly before it generally is governed by Rule 1:1." *Minor v. Commonwealth*, 66 Va. App. 728, 738 (2016). Rule 1:1(a) provides, in pertinent part, that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." The running of the 21-day period commences with the entry of the final order and "may be interrupted only by the entry, within the 21-day period after final judgment, of an order suspending or vacating the final order." *James v. James*, 263 Va.

_____

of its arguments on appeal); *Bennett*, 29 Va. App. at 281-282 (holding that a complainant's withholding his motion for mistrial until after the Commonwealth completed its closing argument is a waiver).

[7] While Cerillo may have requested a curative instruction when he moved to strike the evidence, he does not assign error to the denial of the curative instruction. Rather, he only contests the denial of the motion to set aside the verdict in which he requested a new trial. As this Court is limited to reviewing only the assignments of error presented by the litigant, it declines to address the timeliness of the request of the curative instruction and the appropriateness of its denial. *See Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017); *see also* Rule 5A:20(c)(2).

474, 482 (2002) (internal quotation marks and citations omitted). Neither the filing of post-trial or post-judgment motions, nor the circuit court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1. *See Kosko v. Ramser*, 299 Va. 684, 687 (2021). "Unless a court vacates or suspends a final order during the twenty-one-day period or some other exception to the general rule applies, the court loses jurisdiction over the case and any action taken by the trial court after the twenty-one-day period has run is a nullity." *Minor*, 66 Va. App. at 739-40.

Although the finality imposed by Rule 1:1 generally governs, there are circumstances in which a circuit court may exercise limited jurisdiction beyond the 21-day period. For example, Code § 8.01-428(B) provides a limited exception to the finality imposed by Rule 1:1. Specifically, Code § 8.01-428(B) provides that "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative." Thus, under Code § 8.01-428(B), a circuit court has jurisdiction after Rule 1:1's 21-day period has run for the "limited purpose" of correcting errors and omissions in previously entered orders and other portions of the record. *Belew v. Commonwealth*, 284 Va. 173, 178 (2012).

Here, the circuit court pronounced the sentence at the hearing and the original sentencing order correctly reflected the pronounced sentence in the body of the order. The summary at the end of the order, however, incorrectly reversed the suspended time and active time. After being alerted to the discrepancy, the circuit court properly corrected the order, sua sponte, under Code § 8.01-428(B). "Scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes." *Wellmore Coal Corp. v. Harman Mining Corp.,* 264 Va. 279, 283 (2002) (quoting *Zhou v. Zhou*, 38 Va. App. 126, 133 (2002)). Further, "trial

courts have the authority to interpret their own orders." *Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (quoting *Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2000)). "This Court 'defer[s] to the trial court's interpretation of its own order.'" *Id.* (quoting *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002)). "That interpretation, however, must be reasonable, and [this Court] will 'apply an abuse of discretion standard.'" *Bajgain v. Bajgain*, 64 Va. App. 439, 453 (2015) (quoting *Roe v. Commonwealth*, 271 Va. 453, 458 (2006)). The circuit court correctly interpreted its own order and permissibly corrected it. As such, we find that the circuit court did not abuse its discretion.[8]

CONCLUSION

Accordingly, we affirm the circuit court's judgment and remand for the sole purpose of correcting the clerical error in the amended sentencing order.

*Affirmed and remanded.*

---

[8] Cerillo, without asserting any legal authority for the argument, takes issue with the circuit court entering the order after an "ex parte" communication with the Department of Corrections and without informing the Commonwealth or Cerillo of its intentions to enter the order. However, a circuit court may "at any time on its own initiative" correct clerical mistakes. Code § 8.01-428(B). *See Lamb v. Commonwealth*, 222 Va. 161, 165 (1981) (holding that Code § 8.01-428 is not limited to civil proceedings). Further, Code § 8.01-428 does not require notice when the circuit court is acting on its own initiative, and the circuit court can dispense of notice pursuant to Rule 1:13 as well. *See* Code § 8.01-428(B); Rule 1:13. Though, we do note that in doing so, the circuit court should take great care in only correcting clerical mistakes and not creating new ones.