# Richmond

DOROTHY GATLIN HARRINGTON, ET AL. v. W. L. WOODFIN, ET AL.

January 21, 1952.

Record No. 3877.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Sons* and *J. McBryde Webb,* for the appellants.

*Alan J. Hofheimer* and *Robert C. Nusbaum,* for the appellees.

SMITH, J., delivered the opinion of the court.

This appeal involves the validity of a decree sustaining a bill of review filed by the appellees for the purpose of annulling a final decree entered in a partition suit. A clear understanding of the issues involved requires a detailed statement of the proceedings in the trial court.

In 1940, Felix C. Gatlin and Callie Gatlin, his wife, acquired, as joint tenants, a house and lot in Norfolk county the ownership of which is the subject of this controversy.

Felix C. Gatlin died intestate on February 15, 1941, and his undivided one-half interest descended to his three children, Nathaniel E. Gatlin, Dorothy Gatlin Harrington, and Iris Gatlin Butler, his only heirs at law, subject to the dower interest of his widow, Callie Gatlin. The only real estate owned by the decedent

at his death was the house and lot with which we are herein concerned. Following the death of Felix C. Gatlin, the owners of the property were the widow, Callie Gatlin, with a three-sixths interest and the three children each with a one-sixth interest subject to the dower interest of their mother.

On June 9, 1941, Callie Gatlin entered into a contract with W. L. Woodfin and Ruby Woodfin, his wife, whereby Mrs. Gatlin agreed to convey the fee simple interest in the aforementioned house and lot to the Woodfins.[1] The children did not join in this contract. At that time Nathaniel E. Gatlin was over the age of twenty-one years, but Dorothy Gatlin Harrington and Iris Gatlin Butler were infants.

Shortly thereafter the Woodfins took possession of the property and have continued to occupy the premises. During this nine-year period the Woodfins paid the monthly installments of approximately $26.40 on the debt secured by the deed of trust referred to in the contract of sale, which was held by the Mutual Federal Savings & Loan Association, and made valuable improvements to the property, but the vendor never tendered the

---

[1] "This agreement, made and entered into this 9th day of June, 1941 between Callie Gatlin, Widow, party of the first part, and W. L. Woodfin and Ruby Woodfin, his wife, parties of the second part;

"Witnesseth: That for and in consideration of One Dollar ($1.00) cash in hand paid, receipt of which is hereby acknowledged, the said party of the first part agrees to sell to the said parties of the second part that certain piece or parcel of land in Norfolk County Virginia, * * * for the sum of Three Thousand Fifty Dollars ($3,050.00), upon the following terms and conditions:

"1. The parties of the second part to pay building and loan payments, taxes and insurance on the said property, from date hereon until June 9, 1942.

"2. Parties of the second part to have possession of the said porperty on or before thirty (30) days from the date hereof.

"3. Parties of the second part to pay one-half of any Court costs necessary to clear title to the said property, but in no event to exceed Eighty Dollars ($80.00).

"4. On or before June 9, 1942, party of the first part to furnish parties of the second part with general warranty deed to property above described, and parties of the second part to pay Four Hundred Fifty Dollars ($450.00) upon delivery of deed and a balance of Two Hundred Dollars ($200.00) with interest at 6% on unpaid balance within one (1) year from the date of delivery of deed. Said Two Hundred Dollars ($200.00) to be secured by second deed of trust on property.

"5. It is understood and agreed by and between the parties hereto that the $3050.00 is to be the entire price paid and any payments made by the said parties of the second part to the building and loan are to be deducted from said purchase price of $3050.00.

"In witness whereof the parties hereto have set their hands and seals on the day and year set forth above.

Callie Gatlin (SEAL)
W. L. Woodfin (SEAL)
Ruby Woodfin (SEAL)"

deed called for by the contract nor did the purchasers pay the $650 as provided in the agreement.

Nathaniel E. Gatlin died intestate on October 19, 1949, and his one-sixth interest in the real estate descended to his mother, Callie Gatlin, as his sole heir at law, subject to the dower of his widow, Evelyn P. Gatlin.

On December 14, 1949, Dorothy Gatlin Harrington and Iris Gatlin Butler (who had reached their majority) filed their bill of complaint under section 8-690 of the Code of 1950, against Callie Gatlin, Evelyn P. Gatlin, W. L. Woodfin, and Ruby Woodfin for a partition of the real estate. The bill alleged, "That upon the death of the said Felix C. Gatlin, the said complainants were then infants, became the fee simple owners by descent, of an undivided two-sixth right, title and interest in said land, * * * subject to the dower right of their mother." The bill set forth the terms of the contract between Callie Gatlin and the Woodfins and stated that, "A copy of said contract is hereto attached and marked Exhibit 'B' ", and prayed, "that all rights, if any, of W. L. Woodfin and Ruby Woodfin in and to said property acquired under said contract be extinguished; that they be required to pay a fair charge for the use and occupation of said premises; * * * ."

Callie Gatlin and Evelyn P. Gatlin answered and joined in the prayer of the bill of complaint.

The cause duly matured on proper service of process on the Woodfins, but they did not file an answer or other pleading and the bill was taken for confessed as to them.

By proper decree entered on February 6, 1950, the cause was duly referred to a commissioner in chancery to make the usual inquiries and also to determine whether the Woodfins had any rights, legal or equitable, in the property by virtue of their contract with Mrs. Gatlin.

On April 11, 1950, Callie Gatlin, one of the defendants, died intestate leaving as her only heirs at law the complainants, Dorothy Gatlin Harrington and Iris Gatlin Butler.

The commissioner reported that the Woodfins had appeared with counsel and testified, but filed no pleading of any kind and the bill was taken for confessed as to them, and further "that under the circumstances, Mr. and Mrs. Woodfin have no rights in the property", because the value of the use of the property

enjoyed by them far exceeded what they had paid on the mortgage and all they claimed for repairs, etc.

The commissioner's report was confirmed by the trial court by decree of December 21, 1950, wherein it was stated that Callie Gatlin at her death owned a four-sixths interest in the real estate and that her interest passed to complainants, as her heirs at law, subject to the dower of Evelyn Gatlin in a one-sixth share; and appointed a special commissioner to make sale. The decree held that "the present occupants of the building on said property, W. L. Woodfin, and Ruby Woodfin, who went in possession of said property by virtue of a contract signed by Callie Gatlin, widow dated June 9, 1941, and have remained in possession of said property ever since and during which time they have kept up the payments on the deed of trust of the Mutual Federal Saving & Loan Association which is referred to in said report, amounting to approximately $26.40 a month and that the payments have been continued until the balance due the said Building & Loan Association was $709.05 as of July 3, 1950; and it further appearing that the agreement referred to in said report was never consummated between the said Callie Gatlin, widow and W. L. Woodfin, and Ruby Woodfin, nor any payment made thereunder for the reason that Callie Gatlin, only owned the ½ interest and her dower interest in the other half, the other ½ interest being owned by her children in the proportions of 1/3 each * * *.' ".

Thereafter, on January 30, 1951, the Woodfins, by new counsel, asked leave to file their petition praying that they be allowed to file an answer and exceptions to the commissioner's report. The trial court revoked its decree of December 21, 1950, and granted the Woodfins leave to file their petition and exceptions. These allege that the record affirmatively shows errors of law, that the report of the commissioner in chancery ignored the legal and equitable effect of the contract of sale, weighed the equities and held that the Woodfins owned no legal or equitable title, and pray for a correction of these errors of law.

After argument by counsel, the court, by decree entered on March 19, 1951, held that the decree of December 21, 1950, was final as to the Woodfins "and therefore, the pleadings filed on their behalf on January 30, 1951, though sufficient in content, could not be considered as a petition to rehear; that the report of the Commissioner, however, contains an error of law apparent

on the face of the record of the cause; that the said pleadings filed on behalf of the Woodfins on January 30, 1951, with the consent of the Court and after due notice to the other parties, comply with the requirements of a bill of review and should be construed as such; * * *.'' The court further held that the Woodfins were entitled to any and all interest, both legal and equitable, in the subject property vested in Callie Gatlin at the time of her death subject, however, to the payment by the Woodfins to the personal representative of Callie Gatlin of her pro-rata share of the $650 as provided in the contract and that Mrs. Gatlin at her death was entitled to a four-sixths interest in the property, subject to the dower of Evelyn P. Gatlin.

From the decrees of January 30, 1951, and March 19, 1951, the appellants, Dorothy Gatlin Harrington, Iris Gatlin Butler, and Evelyn P. Gatlin obtained this appeal.

Succinctly stated, the appellants assign as error the following actions of the trial court:

(1) In holding on March 19, 1951, that the report of the commissioner contained errors of law apparent on the face of the record and that the pleadings filed by the Woodfins on January 30, 1951, complied with the requirements of a bill of review and should be construed as such.

(2) In holding by said decree of March 19, 1951, that the Woodfins were entitled to all the interest in the property involved in this cause which was vested in Callie Gatlin at her death, subject to a pro-rata share of $650.

The principles of law which determine whether a bill of review will lie for errors of law apparent on the face of the record are well settlled. *Powers* v. *Howard,* 131 Va. 275, 277, 108 S. E. 687, quotes with approval from Lile, Equity Pleading and Practice § 142, as follows:

''A bill of review does not lie to review or correct errors of judgment in the determination of *facts*. If there be error in this particular, after a final decree, it can be corrected only by an appellate court. But if error of *law* be apparent from an inspection of the record in the cause, and a final decree has been entered, a proper case for a bill of review is *prima facie* presented.''

A bill of review is a bill filed by a party to the suit for the purpose of having the trial court re-examine and reverse, modify,

or annul some previous final decree in the cause and, except in the case of an infant or insane person, it must be exhibited within six months next after such decree. There are only two grounds on which a bill of review may be filed, viz: (1) For error of law apparent on the face of the record, or (2) on·account of newly discovered evidence. Code of Virginia, 1950, section 8-613; *Stamps* v. *Williamson,* 190 Va. 145, 56 S. E. (2d) 71; *Powers* v. *Howard, supra; Phipps* v. *Wise Hotel Co.,* 116 Va. 739, 82 S. E. 681; *Sharp* v. *Shenandoah Furnace Co.,* 100 Va. 27, 40 S. E. 103; 3 M. J., Bill of Review, § 1, *et seq.*; Lile, Equity Pleading and Practice § 140, *et seq.*

A bill of review should specify with some degree of accuracy and definiteness the errors relied on. No particular form is prescribed and, when appropriate, a pleading will be treated as a bill of review provided it conforms to the substantial requirements of such a bill. *Powers* v. *Howard, supra;* 1 Hogg's Equity Procedure § 241 (Miller's ed. 1943).

All parties concede that the trial court's decree of December 21, 1950, was a final decree as to the Woodfins and it was no longer under the control of the trial court. Rules of Court 2:22. Consequently, there were only two courses open to the Woodfins to have the decree set aside, *viz*: by a bill of review in the same court or by appeal to this court. The pleadings filed by the Woodfins on January 30, 1951, though not designated as a bill of review were found by the trial court to comply with the requirements of a bill of review. While these pleadings were inartistically drawn, they were in writing, averred the errors of law in the commissioner's report (which alleged errors of law were also set out in detail in the trial court's decree of December 21, 1950) and also alleged that the Woodfins were interested in the matter disposed of and would benefit by a reversal or modification of the decree; *cf., Stamps* v. *Williamson, supra.*

The appellants here contend that it was error for the trial court to construe the Woodfins' pleadings of January 30, 1951, as a bill of review, because they did not make any exceptions to the commissioner's report nor file any other pleading in the cause and they rely on *Phipps* v. *Wise Hotel Co., supra.* But unlike that case, there was no problem here of putting the parties *in statu quo.* The land had not been sold nor had any of the other parties to the cause changed their positions in reliance on

the Woodfins' failure to act; therefore, we are not here concerned with any question of estoppel or laches.

The appellants contend that the decree of December 21, 1950, is valid and that the holding of the trial court to the effect that the Woodfins were not entitled to the interest of Callie Gatlin is right. They argue that Callie Gatlin undertook in the contract by her *sole* act not only to bind herself, but also to *bind* her son and two infant daughters and, therefore, the contract was unenforceable since it lacked mutuality. In support of this contention appellants rely on 2 Minor on Real Property § 1304, to the effect that contracts to convey real property must be mutually obligatory and if there is lack of mutuality there is no enforceable contract. Also cited is 2 Minor on Real Property § 1314, where it is said that where a parent binds himself to *obtain* a conveyance from his child or wife such contract will not be specifically enforced. Also cited is *Shenandoah Valley R. Co.* v. *Dunlop,* 86 Va. 346, 10 S. E. 239, in which it was held that the essential element of mutuality was wanting since the wife had not signed the contract for the conveyance of her land and that, if she had, being a *feme covert,* she could not be compelled to execute it.

The contract before us was not one by a parent binding herself to obtain a conveyance from her children. A casual inspection of the contract indicates that a suit to perfect title was contemplated.

We have here a claim by the purchasers of land through and under a vendor who owned a three-sixths interest in the property and her unassigned dower in the remaining three-sixths at the time the contract was executed and later acquired an additional one-sixth interest at the death of her son, and this four-sixths interest passed at the death of the vendor to the daughters subject to the contract between Mrs. Gatlin and the Woodfins. The record shows that the purchasers were put in possession and remained in possession of the property by reason of the contract and that they have performed their part of its terms by paying about $1,690.95 on the obligation they assumed and in addition have added valuable improvements. The appellants urge that these rights acquired by the purchasers should be lost, because they have not paid the balance of the purchase price of $650, notwithstanding they are not in default in the agreement they assumed. The daughters, as heirs, acquired what their mother

owned, and she owned no more than that which she could claim subject to her contract with the Woodfins.

*Robinson* v. *Shepherd,* 137 Va. 687, 120 S. E. 265, is somewhat similar to the case at bar. There the owner of a one-half fee simple interest in a house and lot, believing that he had inherited the other one-half fee simple interest from his deceased wife, entered into a contract of sale of the property to Shepherd for $9,000. When the title examination showed the true ownership, Robinson instituted a partition suit against his infant child who had inherited the one-half interest of his mother. The property was sold for $10,650, an advance of $1,650 above the price fixed in the contract. Shepherd came into the suit and asserted his contract right against the vendor. Robinson contended the contract was discharged by his inability to make a good deed. The court said, at page 694: "Lafayette W. Robinson was the absolute fee simple owner of a one-half interest in the property, and a tenant by curtesy of the other half of the property. Shepherd is not trying to hold Robinson liable for his failure to make a good and sufficient warranty deed for the infant's interest in the land; nor did the lower court decree against him as to that interest. The contract is certainly binding on L. W. Robinson as to his entire interest in the land, and Shepherd had the right to bring suit for and have specific performance as to that interest."

An inspection of the contract shows that it was the duty of the vendor to deliver a deed within a year, but no deed was tendered or delivered. The purchasers kept up the monthly payments as provided in the contract, but they did not pay the $80 for court costs since the vendor did not institute legal proceedings. The balance of the debt of $650 was due when the deed was tendered and the vendor not having delivered the deed the purchasers were not in default, since delivery of the deed was a condition precedent to the payment. *Spindle* v. *Miller,* 6 Munf. (20 Va.) 170.

The appellants further contend that the Woodfins did not elect or express their willingness to pay the purchase price and accept a deed from Callie Gatlin for her interest in the property. There are several answers to this contention. The question of election never arose until this suit was begun. The contract contemplated legal proceedings to perfect title, presumably a partition suit by Callie Gatlin. In their first pleading filed in the

case the Woodfins made no claim to more than Callie Gatlin's interest. In *Boston* v. *DeJarnette,* 153 Va. 591, 601, 151 S. E. 146, election was allowed in this court. There is no merit in this contention.

In connection with the action of the commissioner in his report of weighing the equities between the parties, it should be pointed out that Mrs. Gatlin was never assigned her dower and consequently she had the right to hold, occupy and enjoy the house and lot (Code section 64-36), or allow another to do it for her. *McReynolds* v. *Counts,* 9 Gratt. (50 Va.) 242. Under the circumstances, it is clear that the children have no claim against the property for rents, profits, etc., between the time that Felix C. Gatlin died and the death of Callie Gatlin.

An examination of the bill of complaint, the decree of reference, the report of the commissioner in chancery, and the decree of December 21, 1950, reciting the evidence on which the court acted, do not lead to the legal conclusion reached that the Woodfins owned no legal or equitable interest in the property. There was error of law appearing from the face of the record and this may be taken advantage of by a bill of review. *Powers* v. *Howard, supra.*

Upon the merits of the question we are, for the reasons herein stated, of opinion that the decree of March 19, 1951, was right and it will be affirmed.

*Affirmed.*