COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Russell
Argued at Leesburg, Virginia

ERNEST HIGHSMITH

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 0395-19-4          JUDGE WESLEY G. RUSSELL, JR.
                                               NOVEMBER 26, 2019

CLARETHA J. HIGHSMITH

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Carl L. Crews for appellant.

No brief or argument for appellee.

Ernest Highsmith (husband) appeals an order of the circuit court altering the circuit court's

initial award to him of 100% of the marital share of the military pension earned by Claretha J.

Highsmith (wife). Husband acknowledges that it was error for the circuit court to award him more

than fifty percent of the marital share of wife's military pension, but argues that the circuit court was

without jurisdiction to alter the erroneous award. Under the extremely unusual circumstances in this

case, we find that the circuit court appropriately amended its initial award, and thus, affirm the

judgment of the circuit court.

BACKGROUND

The pertinent facts are undisputed. The parties were married in September 2011 and

separated in January 2016. Wife is a retired member of the military who had accrued retirement

benefits based on twenty-eight years of eligible service, three years and one month of which were

during the marriage.

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The circuit court conducted an evidentiary hearing on the grounds for divorce and equitable distribution on July 25, 2018. Wife did not appear, and the circuit court issued a ruling from the bench. It determined that the parties had been living separate and apart for over one year and granted the divorce on those grounds. The circuit court then classified as marital property the parties' 2003 GMC truck and a trailer and found the value of that property to total $2,260. It awarded husband "[t]hose two items of personal property . . . as his portion of any equitable distribution . . . ."

The circuit court also considered wife's military pension, which was hybrid property. It concluded that "the marital share of the pension is eleven percent." The circuit court made this determination by applying a coverture fraction whereby the court "[took] the number of months of the pension accrued during the marriage divided by the total number of months of the pension accrual." Specifically, it "found that the total number of months that the pension had accrued was three hundred and thirty-six months [and] the number of months for the pension accruing during the course of the marriage was thirty-seven months." After noting that it had not been presented a present value of the pension despite the fact that wife began receiving pension payments in 2014, the circuit court determined that "rather than awarding a distinct amount, I am going to award a percentage." It then stated that it was awarding husband eleven percent of the entire pension. Although it did not make a comment to this effect, the circuit court's statement awarding husband eleven percent of the entire pension awarded husband 100% of the marital share of the pension, which the circuit court already had determined was eleven percent of the entire pension.

Husband was tasked with drafting the final decree. The circuit court set August 24, 2018, as the date to present the decree for entry and directed that a copy of the transcript of the July 25, 2018 hearing be attached to the final decree upon entry.

As scheduled, the circuit court convened a hearing on August 24, 2018, to enter the final decree. Wife was present. The circuit court entered the final decree, which, consistent with the circuit court's statements from the July 25, 2018 hearing, contained the following provision:

> The [c]ourt determines that the number of months the pension of [wife] has accrued is three hundred and thirty-six months and the number of months it accrued during marriage the thirty-seven months. The [c]ourt also determines [wife] has been actively receiv[ing] retirement benefits since 2014. The [c]ourt awards [husband] as separate property 11% of the gross amount of [wife's] military retirement pension pay. This award of 11% shall include all future cost of living adjustments. . . . If required by military regulations that the percentage awarded be equated to a dollar amount, said amount shall be equal to 11% of her monthly pension including all future cost of living adjustments[.]

On September 4, 2018, wife, *pro se*, filed a praecipe requesting a hearing on September 14 or 21, 2018 so she could argue a motion for reconsideration. As the basis for her motion, wife stated that she "did not have [the] opportunity to appear due to counsel'[s] withdrawal."[1] No motion to suspend the August 24, 2018 final decree was made, and the circuit court did not enter such a suspending order.

On September 13, 2018, husband's counsel filed an affidavit with the circuit court and sought entry of a new final decree to correct errors in the caption and the signature blocks for his counsel. After noting that he had "presented to the [c]ourt" the "Final Order of Divorce" for entry, counsel represented that he now realized that it contained clerical errors. Specifically, the order that had been entered was captioned as if it were an order of the general district court of Prince William County and the signature block of husband's counsel listed an incorrect address for husband's counsel. On September 17, 2018, the circuit court entered a revised final order of divorce correcting

---

[1] Prior to the July 25, 2018 hearing, wife had been represented by counsel. The circuit court granted her counsel's motion to withdraw by order dated June 22, 2018.

the typographical errors identified in the affidavit filed by husband's counsel. The revised order does not contain any reference to the circuit court's prior August 24, 2018 order.

As a result of the praecipe wife filed on September 4, 2018, a hearing was held on September 21, 2018. Both parties appeared, with wife being represented by new counsel. As a result of the hearing, the circuit court entered an order on September 21, 2018. The order denied wife's "motion to reconsider due to lack of counsel and consideration of [husband's] $50,000.00 marital asset[;]" however, the circuit court further ordered that it "[was] staying the finality of the divorce decree entered on Aug[ust] 24, 2018 until Nov[ember] 9, 2018" to address on that date the application of the "military 10/10 rule"[2] to the portion of the final decree addressing division of wife's military pension.

The hearing originally scheduled was continued by order dated November 30, 2018. That order also directed that "the Final Decree of Divorce is stayed until the hearing on this matter, currently scheduled for December 7, 2018[.]"

On December 7, 2018, the circuit court considered wife's motion for reconsideration. Wife argued the final decree was in error because husband could not satisfy the "10-10 rule" and, in her view, the order required payments to be made to husband by DFAS. Husband responded that the order did not require that payments be made by DFAS. The circuit court agreed with husband and entered an order denying wife's motion to reconsider. The order further directed that "the

---

[2] 10 U.S. Code § 1408(d)(2) is colloquially referred to as the "10-10 rule." 10 U.S. Code § 1408(d)(2) specifies when the federal Defense Finance and Accounting Service (DFAS) will pay directly a non-military spouse the portion of a military pension awarded to the non-military spouse in a divorce proceeding. It provides that "[i]f the spouse or former spouse to whom payments are to be made under this section was not married to the [military] member for a period of 10 years or more during which the [military] member performed at least 10 years of service creditable in determining the [military] member's eligibility for retired pay, payments may not be made under this section[.]" If the "10-10 rule" is not satisfied, DFAS pays the entire pension payment to the military spouse, leaving it to the military spouse to pay the non-military spouse the amounts awarded to the non-military spouse in the divorce proceedings.

Suspension Order entered on September 21, 2018 is hereby lifted and the Final Order of Divorce entered on September 17, 2018, *nunc pro tunc*, for August 24, 2018 is fully reinstated."

Fourteen days later, on December 21, 2018, wife, by yet another new counsel, filed a second motion to reconsider, asking the court "to reconsider its equitable distribution ruling regarding division of [wife's] military retired pay." Citing Code § 20-107.3(G)(1), wife argued that the circuit court had committed "reversible error" in its ruling because "the court is without authority to award [husband] the entire marital share" of wife's military pension. With the motion, wife's new counsel tendered an order to the circuit court to suspend operation of the December 7, 2018 order. That very day, the circuit court entered the order and suspended the December 7, 2018 order "pending further order of this court."

In response to wife's motion, husband filed "Defendant's Opposition to Plaintiff's 2nd Motion for Reconsideration." Husband argued that any error of the circuit court in awarding him the full amount of the marital share of wife's pension rendered the order merely voidable rather than void *ab initio*, and as such, Rule 1:1 precluded the circuit court from exercising jurisdiction to modify any portion of the final decree. Husband specifically posited that the circuit court "was divested of jurisdiction immediately after it lifted the suspension" in its December 7, 2018 order. In essence, he made a retroactivity argument, asserting that, because the December 7, 2018 order reinstated the September 17, 2018 order, Rule 1:1's twenty-one-day period had expired in October.

The circuit court conducted a hearing on wife's motion on February 15, 2019. Noting that husband opposed the motion on jurisdictional grounds, the court queried, "[D]on't I have jurisdiction to fix an error that I made? . . . And doesn't the Rule provide for, at least if for no other reason, the opportunity to fix clerical errors?" Husband agreed that the court had such power, but argued that "it's not a clerical error." A lengthy discussion ensued.

The circuit court acknowledged that his statements from the bench as reflected in the hearing transcript demonstrated that he had ordered that husband receive 100% of the marital share of wife's military pension and that the language in the final decree accurately reflected what had been said from the bench. From this, husband argued that there was no clerical error to correct, asserting that a

> clerical error is one in which . . . the [c]ourt [order] doesn't speak the truth as to what the [c]ourt stated. In this case, the truth has been stated. The truth has been stated by the [c]ourt, it's been verified by the transcript, and it's verified by the order itself. So the language is all true; there is no falsity in any of the language.

The circuit court queried,

> [a]nd if I spoke incorrectly, is that not a clerical error? If I'm deciding a case and I write myself a note during the course of that saying that 11 percent is his marital share, and the reality is what I should have written is 11 percent is the marital share, isn't that the case here? I mean, isn't that the case . . . ?

The circuit court further noted that numerous cases "say that conforming a divorce decree's pension provision to effectuate its intent is not improper." It then explained:

> [I]t appears to me that I just simply misspoke and I made a mistake. And that mistake was compounded when I entered an order that was consistent with my mistaken or misspoken ruling.
>
> What I intended to do was to give [husband] a portion of the marital share of the pension, and that portion would be 50 percent. That's not what I did and that's not what I said. . . . [W]hat I intended to do is to make a finding that the marital share of the pension . . . is 11 percent, which I believe everybody agreed, and let me say it today, what I intended was to award him 50 percent of that marital share, and I didn't; I misspoke[.]

The circuit court continued:

> The question is whether or not I can fix it? And I think I can. I think it's an erroneous ruling, it's in the nature of a clerical error, and it's a clerical error in which I misspoke as opposed to miswrote.
>
> So I'm going to fix it and I'm going to amend my order to award him -- to find that the marital share of the pension is 11 percent, and that [husband] is entitled to 50 percent of the marital share.

- 6 -

Ultimately, the circuit court concluded as follows:

> I'm finding that I can amend it for two reasons: One, that was my intent. What I have ruled today was the intent of the ruling on -- in August, notwithstanding the fact that I misspoke, all right?

> The second, this is in the vein of a clerical error. It is a spoken clerical error, not a written clerical error. And I think that it's incumbent upon the [c]ourt to fix it and it does not -- it meets the end of justice; it fixes my error. And when the [c]ourt is the one to make an error, it seems to me that we ought to fix it if we can. And that's what I have done today . . . .

Consistent with this ruling, the circuit court entered an order that granted wife's motion to reconsider and granted "leave to amend the Final Order of Divorce to correct the clerical error which ordered payment of 100% of the marital share of [wife's] military retired pay to [husband]." The February 15, 2019 order also continued the matter to March 1, 2019 for entry of the amended final decree. By orders dated March 1 and March 15, 2019, entry of the decree was continued to April 5, 2019. Ultimately, on May 8, 2019, the circuit court entered the parties' "*Nunc Pro Tunc* Amended Final Order of Divorce."

In the interim, on March 5, 2019, husband noted an appeal "from the ORDER entered by [the] Prince William County Circuit Court on February 15, 2019, granting Plaintiff's 2nd Motion for Reconsideration."[3] He asserts three assignments of error. The assignments of error, however, are different ways of addressing the same point; he contends that the circuit court lost jurisdiction over the case, and thus, was without authority to alter its award to him of 100% of the marital share of wife's military pension.

---

[3] Pursuant to Code § 17.1-405(3)(b), we have jurisdiction to hear appeals of "[a]ny final judgment, order, or decree of a circuit court involving . . . divorce[.]" As noted above, the circuit court's last order in the matter was entry of the amended final order of divorce on May 8, 2019, more than two months after husband had filed his notice of appeal. Despite this, we conclude we have jurisdiction over the appeal because, in its February 15, 2019 order, the circuit court fully had determined the rights of the parties after having "adjudicat[ed] the principles of the cause." Code § 17.1-405(4)(ii). Accordingly, we consider the appealed order an appealable interlocutory order over which we can exercise jurisdiction pursuant to Code § 17.1-405(4).

ANALYSIS

I. Division of Wife's Military Pension

Prior to the passage of the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408 *et seq.*, a military pension was not subject to division in a divorce proceeding. Starr v. Starr, 70 Va. App. 486, 489 (2019) (citing McCarty v. McCarty, 453 U.S. 210 (1981)). The adoption of the USFSPA legislatively overruled McCarty and subjected military pensions to division in a divorce proceeding. 10 U.S.C. § 1408(c)(1) ("[A] court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."); see also Dugan v. Childers, 261 Va. 3, 11 (2001). Thus, in addition to permitting a military pension to be divided in a divorce proceeding, the USFSPA requires that any such division be consistent with the law of the state in which such division is taking place, in this case Virginia.[4]

The division of pensions in divorce proceedings in Virginia is governed by Code § 20-107.3(G)(1), which provides that

> [t]he [circuit] court may direct payment of a percentage of the marital share of any pension . . . which constitutes marital property . . . . However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed 50 percent of the marital share of the cash benefits actually received by the party against whom such award is made.

Code § 20-107.3(G)(1) then defines "marital share" as the portion of the pension "the right to which was earned during the marriage and before the last separation of the parties[.]"[5]

---

[4] The USFSPA defines a "court order" as "a final decree of divorce . . . which . . . is issued *in accordance with the laws of the jurisdiction of that* [*state*] *court*[.]" 10 U.S.C. § 1408(a)(2)(A) (emphasis added).

[5] Bringing things full circle, Code § 20-107.3(G)(1) concludes by requiring that "[a]ny determination of military retirement benefits shall be in accordance with the federal Uniformed

Neither party disputes that the circuit court correctly determined that the marital share of wife's military pension was eleven percent of the total pension. Pursuant to Code § 20-107.3(G)(1), the circuit court could award husband no more than half of the marital share. Accordingly, the circuit court could award husband no more than five and a half percent of the total pension.

As noted above, the circuit court's initial order awarded husband eleven percent of the total pension, which constituted 100% of the marital share. There is no dispute that this violated the plain language of Code § 20-107.3(G)(1) and was error. Wife argued that it was erroneous in her second motion for reconsideration, and the circuit court acknowledged its error at the hearing on that motion. Furthermore, at oral argument in this Court, husband conceded that, consistent with Code § 20-107.3(G)(1), the circuit court was without statutory authority to award him the entire marital share of wife's military pension.

## II. Standard of Review

Despite having conceded that the circuit court's initial division of wife's military pension was in error, husband argues that we must reverse the circuit court's correction of this error because Rule 1:1 of the Rules of the Supreme Court of Virginia divested the circuit court of jurisdiction over the case, leaving the circuit court without authority to consider or grant wife's second motion for reconsideration. As such, the appeal "involves the interpretation of [the] Rules of the Supreme Court of Virginia[,]" which "we review *de novo*." Minor v. Commonwealth, 66 Va. App. 728, 738 (2016); see also Lloyd v. Kime, 275 Va. 98, 106 (2008) ("Whether a trial court's actions

---

Services Former Spouses' Protection Act (10 U.S.C. 1408 et seq.)." As noted above, the USFSPA requires that any division of a military pension must be consistent with the law of the state court doing the dividing. Accordingly, pursuant to the relevant statutes, any division order that violates Virginia law also violates the USFSPA and any division order that violates the USFSPA also violates Code § 20-107.3(G)(1).

conflict with the procedural requirements set forth in a rule of this Court . . . is a question of law that is reviewed *de novo*.").

### III. Circuit Court's Loss of Jurisdiction Pursuant to Rule 1:1

In general, "[a] circuit court's retention of jurisdiction over a matter . . . is governed by Rule 1:1." Minor, 66 Va. App. at 739. Rule 1:1 provides that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Accordingly, absent an exception, "[o]nce a final judgment has been entered and the twenty-one-day time period of Rule 1:1 has expired, the trial court is thereafter without jurisdiction in the case." Super Fresh Food Mkts. of Va., Inc. v. Ruffin, 263 Va. 555, 563 (2002).

Rule 1:1's "twenty-one-day period commences with the entry of the final order and 'may be interrupted only by the entry, within the 21-day period after final judgment, of an order suspending or vacating the final order.'" Minor, 66 Va. App. at 739 (quoting James v. James, 263 Va. 474, 482 (2002)). "Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1[.]" School Bd. v. Caudill Rowlett Scott, Inc., 237 Va. 550, 556 (1989) (internal citations omitted).

Husband, assuming that the circuit court had jurisdiction to enter all of the orders in this case through the December 7, 2018 order, argues that the circuit court was divested of jurisdiction the moment it entered the December 7, 2018 order reinstating the September 17, 2018 order. He reasons that by reinstating the September 17, 2018 order, the December 7, 2018 order vitiated all that had occurred after September 17, 2018. As a result, he argues that Rule 1:1's twenty-one-day period began running in September. We disagree.

Unlike an order entered *nunc pro tunc*, in which a circuit "court is memorializing 'now' what it did 'then[,]'" Minor, 66 Va. App. at 741 n.6, the December 7, 2018 order memorialized what the circuit court did on December 7, 2018. Assuming, as husband does, the circuit court had jurisdiction to consider and rule upon wife's first motion to reconsider on December 7, 2018, the December 7, 2018 order became the potential final order in the case and all pertinent deadlines would run from that date. Thus, assuming it had jurisdiction to enter the order, the circuit court retained jurisdiction over the case for an additional twenty-one days as specified in Rule 1:1, and the parties had thirty days in which to note an appeal pursuant to Rule 5A:6. To adopt husband's position would lead to absurd and untenable results.[6]

Although we disagree with husband's argument about when the circuit court was divested of jurisdiction, we have an independent duty to determine whether the circuit court had jurisdiction when it issued its order correcting its acknowledged error. Id. at 738. Because the initial final decree was entered on August 24, 2018, the last day that the circuit court had plenary jurisdiction over the case was September 14, 2018, twenty-one days after the entry of the August 24, 2018 order.

The parties and the circuit court appear to have assumed that the September 17, 2018 order correcting the non-substantive errors related to the caption on the order and the listing of husband's counsel's address was the final order in the case. A circuit court always has the ability

---

[6] If the December 7, 2018 order retroactively made the September 17, 2018 order the final order, significant deadlines regarding the case would have run *while the circuit court was still making substantive decisions in the case*. Under husband's theory, Rule 1:1's twenty-one-day period would have run on October 8, 2018 and Rule 5A:6's thirty-day deadline in which a party must note an appeal would have run on October 17, 2018. In the time period between October 17, 2018 and the entry of the December 7, 2018 order, the circuit court considered and granted husband's motion for sanctions and considered and denied wife's first motion for reconsideration. If husband's argument were correct, the circuit court would have insulated these rulings from appellate review by entry of the December 7, 2018 order. The Rules of the Supreme Court of Virginia do not countenance such an absurd result.

to correct such clerical errors as that power is granted by statute, Code § 8.01-428(B), and is a part of a court's "inherent power . . . to make the record 'speak the truth.'" Davis v. Mullins, 251 Va. 141, 149 (1996) (quoting Netzer v. Reynolds, 231 Va. 444, 449 (1986)). "Such a corrective order, whether entered pursuant to statute or as a result of a court's inherent authority, is often referred to as an order *nunc pro tunc*." Minor, 66 Va. App. at 741.

Accordingly, the circuit court had authority to enter the September 17, 2018 order correcting the non-substantive errors in the August 24, 2018 order. Nevertheless, in doing so, the circuit court did not reacquire jurisdiction over the case or supplant the August 24, 2018 order as the final order in the case. As the Virginia Supreme Court observed in Davis:

> When acting *nunc pro tunc,* the court does not reacquire jurisdiction over the case. Rather, the trial court merely corrects the record by entry of an order *nunc pro tunc,* under the accepted fiction that the order relates back to the date of the original action of the court "now for then." Nonetheless, we have carefully noted that the power to amend should not be confounded with the power to create. While the power is inherent in the court, it is restricted to placing upon the record evidence of judicial action which has actually been taken, and presupposes action taken at the proper time.

251 Va. at 149 (internal quotation marks and citations omitted).[7] Accordingly, the August 24, 2018 order was the final order for the purposes of Rule 1:1.

Our conclusion that the August 24, 2018 final decree was the final order in the case and that Rule 1:1's twenty-one-day period ran in mid-September calls into question the validity of all of the orders the circuit court entered after September 17, 2018, including the suspending orders and the February 15, 2019 order that is the subject of this appeal. Consequently, unless an

---

[7] It does not matter that the circuit court's September 17, 2018 order does not reference Code § 8.01-428(B) or utilize the phrase *nunc pro tunc*; the order was such an order. See Minor, 66 Va. App. at 741.

exception to Rule 1:1's finality provisions applies, "any action taken by the [circuit] court after the twenty-one-day period ha[d] run is a nullity." Minor, 66 Va. App. at 739-40.

IV. Exceptions to Rule 1:1's Twenty-One-Day Period

Although Rule 1:1's twenty-one-day limit on a circuit court's jurisdiction is designed to insure finality of judgments, it is subject to a few, limited exceptions that allow a circuit court to "exercise limited jurisdiction beyond the twenty-one-day period." Id. at 740. As noted above, a circuit court has both inherent authority and statutory authority pursuant to Code § 8.01-428(B) to correct clerical errors in final orders after the twenty-one-day period has expired. Also, if a circuit court's order is void, attacks upon it are not limited to Rule 1:1's twenty-one-day period because the order is "a complete nullity and it may be 'impeached directly or collaterally by all persons, anywhere, at any time, or in any manner.'" Singh v. Mooney, 261 Va. 48, 52 (2001) (quoting Barnes v. Am. Fertilizer Co., 144 Va. 692, 705 (1925)). Additionally, errors in a circuit court's order may be corrected outside of Rule 1:1's twenty-one-day period when "set aside pursuant to a bill of review (if filed within the limitations of Code § 8.01-623)[.]" De Avies v. De Avies, 42 Va. App. 342, 346 (2004).

We are charged to "decide cases 'on the best and narrowest grounds available.'" Commonwealth v. White, 293 Va. 411, 419 (2017) (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015)). Although the circuit court and the parties focused on the correction of a clerical error and whether the entry of an order in derogation of both state and federal law rendered the order void or merely voidable, we conclude that the best and narrowest resolution of this appeal is to consider it through the lens of a bill of review.[8]

_____

[8] Although not the stated basis of the circuit court's action, it is appropriate to address the issues using the bill of review rubric under "the right-result-*different*-reason doctrine[.]" Rickman v. Commonwealth, 294 Va. 531, 542 (2017). This doctrine allows us to affirm a judgment of a circuit court on an alternative ground so long as no additional facts need to be found to support the alternative rationale. See Perry v. Commonwealth, 280 Va. 572, 580-81

V.  Bill of Review

The bill of review is a common law pleading "that is used to reopen a suit in equity after the final decree has been rendered."  W. Hamilton Bryson, <u>Bryson on Virginia Civil Procedure</u> § 12.05(4) (5th ed. 2017).  Although "a bill of review is limited in scope and is rarely utilized" and the use of it "discouraged[,] . . . it remains an available procedural device until abolished by the General Assembly."  <u>Blunt v. Lentz</u>, 241 Va. 547, 550 (1991).[9]

Pertinent here, it can be used to correct an "error of law [apparent] on the face of the record[.]"  Bryson, <u>supra</u>, § 12.05(4).  As the Supreme Court has explained,

> The principles of law which determine whether a bill of review will lie for errors of law apparent on the face of the record are well settled. . . .  A bill of review does not lie to review or correct errors of judgment in the determination of *facts*.  If there be error in this particular, after a final decree, it can be corrected only by an appellate court.  But if error of *law* be apparent from an inspection of the record in the cause, and a final decree has been entered, a proper case for a bill of review is *prima facie* presented.

<u>Blunt</u>, 241 Va. at 550 (ellipsis in original) (quoting <u>Harrington v. Woodfin</u>, 193 Va. 320, 325 (1952)).

The arguments wife raised in the circuit court in her pleading styled as her second motion to reconsider fall neatly within these parameters.  At no point did she contest any factual finding or discretionary ruling of the circuit court.  In fact, the parties and the circuit court all agree on the underlying facts, including that the marital share of wife's military pension is eleven percent.  Wife only challenged that the August 24, 2018 order awarded husband 100% of the marital share

---

(2010) (recognizing that an appellee's "[f]ailure to make the argument before the trial court is not the proper focus" of determining whether the doctrine applies, but rather, whether the factual record is sufficient to provide the basis for the alternate ground and the appellant had an opportunity to dispute the underlying facts supporting the alternate ground in the proceeding in the circuit court).

[9] Not only has the General Assembly not abrogated the bill of review, the Code of Virginia contains a provision governing its use.  <u>See</u> Code § 8.01-623.

in violation of the express terms of Code § 20-107.3(G)(1). Not only is that legal error apparent on the face of the August 24, 2018 order, both husband and the circuit court have acknowledged the initial award constituted error.

When asked at oral argument in this Court if he could distinguish wife's circuit court pleading from a bill of review, husband could not offer a distinguishing characteristic.[10] He does not dispute that wife's pleading only sought to correct an acknowledged legal error apparent on the face of the August 24, 2018 order and concedes that he had an opportunity to argue against her position. The argument he raised in the circuit court is the same one he raises here: Because the February 15, 2019 order was entered outside of Rule 1:1's twenty-one-day period, the circuit court was without authority to enter it.

This argument, of course, ignores that the bill of review is an exception to Rule 1:1's finality provisions. The timing requirement applicable to a bill of review is found in Code § 8.01-623, which provides, in pertinent part, that "no bill of review shall be allowed to a final decree, unless it be exhibited within six months next after such decree[.]" Here, not only was the operative

---

[10] Although not raised by husband, we address two potentially distinguishing characteristics, neither of which alters our analysis. First, we acknowledge that wife styled the operative pleading as a second motion to reconsider and not as a bill of review. The Supreme Court of Virginia, however, has treated a pleading styled a motion for rehearing as a bill of review when, in effect, the pleading was a bill of review. Gills v. Gills, 126 Va. 526, 543 (1920) (recognizing that, although the party had styled a pleading as a petition for rehearing in the proceedings below, it was appropriate to address it as a bill of review on appeal because "[o]ur practice is rightly liberal as touching mere forms of pleading, however, and we have no difficulty in regarding the petitions as bills of review"). Second, traditional bill of review practice assumes an independent action filed outside the original case. Here, although the circuit court already had lost plenary jurisdiction, wife filed her pleading utilizing the same case number as the original case, treating it as a mere continuation of the case as opposed to an independent action. In a previous case, the Supreme Court viewed the independent action requirement as non-essential, observing that "[t]here was but one case, the case on the bill of review being but a continuation of the original case in the same court." Goolsby v. St. John, 66 Va. (25 Gratt.) 146, 163 (1874), overruled in part, on other grounds by Staunton Perpetual Bldg. & Loan Co. v. Haden, 92 Va. 201 (1895).

pleading filed within six months of the August 24, 2018 order, the circuit court's February 15, 2019 order correcting the legal mistake was entered within six months of the original, erroneous order.

We conclude that, given the unusual circumstances here, the rules applicable to a bill of review apply in this case. As a result, we conclude that the circuit court had jurisdiction to correct the legal error apparent on the face of the August 24, 2018 order. Accordingly, we affirm the circuit court's corrected division of wife's military pension as reflected in its February 15, 2019 order and the subsequently entered final decree.[11]

In resolving the case in this manner, we reiterate the Supreme Court's admonition in Blunt that "use of a bill of review is discouraged." 241 Va. at 550. As noted above, the bill of review is limited in scope and will be viable in only a handful of cases. Even a minor change in the unusual facts of this case may have rendered a bill of review inapplicable. The far more prudent course when confronted with such an error is to seek a suspending order and a correction within Rule 1:1's twenty-one-day period or simply to note an appeal. Thus, although the bill of review remains available, litigants who rely upon it may do so at their own peril.

CONCLUSION

For the foregoing reasons, we conclude that, although twenty-one days had passed, the circuit court had limited jurisdiction to modify its final decree to correct a legal error apparent on the face of that decree. Accordingly, we affirm the circuit court's judgment regarding the division of

---

[11] Having affirmed the circuit court on these grounds pursuant to "the right-result-*different*-reason doctrine . . . , we express no view on the correctness of the lower court's rationale." Rickman, 294 Va. at 542. As a result, we express no opinion as to whether the error in the August 24, 2018 order could have been corrected as a clerical error pursuant to Code § 8.01-428(B). Furthermore, we express no opinion as to whether entry of an order in violation of both the USFSPA and Code § 20-107.3(G)(1) might render an order void as opposed to merely voidable.

wife's military pension as reflected in its February 15, 2019 order and the subsequently entered final

decree.

Affirmed.[12]

---

[12] As part of his appeal, husband sought an award of attorney's fees. Having affirmed the judgment of the circuit court, we conclude that no such award of fees is appropriate.